Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| ALEXIS O. HERNÁNDEZ ARNALDY<br><br>Apelante<br><br>v.<br><br>ENGINEERED PARTS AND SERVICES, INC.<br><br>Apelado | KLAN202400558<br><br>Consolidado con<br><br>KLCE202400868<br><br>KLCE202401088 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.:<br>D AC2015-2333<br><br>Sobre:<br>Apelación Civil |

Panel integrado por su presidenta, la Juez Brignoni Mártir, el Juez Candelaria Rosa, la Jueza Álvarez Esnard y la Jueza Díaz Rivera.

Díaz Rivera, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de enero de 2025.

El pasado 6 de junio de 2024, compareció ante *nos*, Alexis O. Hernández Arnaldy (Hernandez Arnaldy o apelante) y nos solicitó que revisemos la *Sentencia Parcial* emitida el 7 de mayo de 2024 y notificada el 8 de mayo de 2024, por el Tribunal de Primera Instancia (TPI o foro primario), Sala Superior de Bayamón. Mediante el referido dictamen, el TPI declaró *No Ha Lugar* la reclamación por comisiones de la *Demanda* incluida como parte de la causa de acción de incumplimiento de contrato y daños. Al recurso de apelación presentado se le asignó el alfanumérico KLAN202400558.

Posteriormente, el 12 de agosto del 2024, el apelante presentó el recurso de *certiorari* KLCE202400868. En el mismo, nos solicitó que revisáramos la *Orden* emitida el 9 de julio de 2024, notificada el 11 de julio de 2024. Mediante esa *Orden,* el foro primario le impuso al apelante el pago de honorarios de abogado a favor de Engineered Parts and Services, Inc. (apelado o EPS).

Además, el 9 de octubre de 2024, el apelante presentó el recurso de *certiorari* KLCE202401088. En esa ocasión, nos solicitó que revisáramos la *Orden* emitida el 13 de agosto de 2024 y notificada el 16 de agosto de 2024. El apelante solicitó una reconsideración de dicha *Orden*, la cual fue declarada *No Ha Lugar* el 4 de septiembre de 2024, mediante *Orden* archivada en autos y notificada el 9 de septiembre de 2024.

Por tratarse del mismo asunto y derecho aplicable, los casos KLCE202400868 y KLCE202401088 fueron consolidados con el KLAN202400558.

Examinada la solicitud de autos, la totalidad del expediente y el estado de derecho aplicable, se *confirma* la *Sentencia Parcial* apelada. Asimismo, se *expide* el auto de *certiorari* en el caso KLCE202400868 y, en consecuencia, se *revoca* la *Orden* que impuso los honorarios de abogado. Por último, se *expide* el auto de *certiorari* en el caso KLCE202401088 y se *confirma* la *Orden* en cuanto a la imposición de costas.

## I.

### A. KLAN202400558

Según surge del expediente, el 13 de noviembre de 2015, la parte apelante presentó una *Demanda* en contra de EPS sobre incumplimiento de contrato, daños y perjuicios y despido injustificado. A grandes rasgos, alegó que comenzó a trabajar para la parte apelada el 22 de octubre de 2007, hasta que según él fue despedido injustificadamente el 31 de julio de 2015. Acentuó que, luego del despido, le solicitó a la parte apelada que le informara la cantidad total de las comisiones ganadas, acumuladas y desglosadas por año. Alegó que la parte apelada le brindó información incompleta y que existía una diferencia de más de $1,526,000.00, entre las comisiones computadas por el empleado y las comisiones computadas por la empresa. Por consiguiente,

solicitó el pago de las comisiones ganadas acumuladas y no pagadas. Además, solicitó el pago de las vacaciones y una compensación por el incumplimiento contractual, así como por el despido injustificado.

Así las cosas, el 14 de diciembre de 2015, la parte apelada presentó su *Contestación a la Demanda*. En síntesis, negó las alegaciones de la *Demanda*. Adujo que no le adeuda ninguna suma de dinero al apelante por los conceptos reclamados. Destacó que el apelante nunca generó $10,000.00 mensuales en comisiones y que el contrato de empleo establecía que la comisión generada le sería pagada luego de que se recibiera el pago por parte del cliente.

Luego de varios incidentes procesales, innecesarios pormenorizar, se llevó a cabo el Juicio en su Fondo los días 15, 16, 17, 18, 22, 23, 24, 29 y 30 de abril de 2024. En lo aquí pertinente, el apelante intentó testificar en el juicio del 18 de abril de 2024, cómo se distribuyeron las comisiones y la participación que le correspondía en cada uno de los proyectos que trabajó. Por su parte, el apelado objetó oportunamente, ya que alegó que con ese testimonio se estaba intentando enmendar por primera vez las alegaciones de la *Demanda*. Añadió que dicha alegación nunca fue parte de la teoría del caso expuesta en el *Informe de Conferencia Preliminar Entre Abogados* (*Informe Preliminar*). El TPI, luego de escuchar los planteamientos de las partes, declaró *Ha Lugar* a la objeción de la parte apelada por entender que, en casi diez (10) años de litigio, el caso se trabajó con una división de comisiones determinada, que también fue confirmada con el informe pericial.[1]

Finalmente, el 7 de mayo de 2024, el TPI emitió una *Sentencia Parcial* mediante la cual declaró *No Ha Lugar* a la reclamación sobre comisiones adeudadas y, en consecuencia, desestimó con perjuicio

---

[1] Transcripción del Juicio en su Fondo del 18 de abril de 2024, págs. 77 y 79.

dicha causa de acción. Además, el foro primario desestimó con perjuicio la reclamación del pago de vacaciones al no haberse presentado prueba alguna sobre esta. Dicha *Sentencia Parcial* fue notificada a las partes el 8 de mayo de 2024.

Inconforme, el apelante compareció ante *nos* y señaló la comisión de los siguientes errores:

A. Erró el Tribunal de Primera Instancia en su apreciación de la prueba al aplicar la doctrina de uso y costumbre para determinar que las comisiones debidas al Demandante se distribuían en partes iguales entre los vendedores.

B. Erró el Tribunal de Primera Instancia al aceptar que la representación legal de la demandada presentara la defensa afirmativa de uso y costumbre en sala, la cual nunca fue parte del Informe Preliminar entre Abogados.

C. Erró el Tribunal de Primera Instancia en su interpretación de la doctrina de uso y costumbre para determinar que las comisiones debidas al Demandante se distribuían en partes iguales entre los vendedores, cuando el Perito Económico del Demandado en su Informe, página 19, estableció que para determinar las comisiones generadas por el Demandante, las comisiones pagadas por el Demandado, y las comisiones adeudadas al Demandante, tuvo que proceder a determinar en cuales proyectos participó el Demandante y cuales este tenía derecho a acumular comisiones.

D. El Tribunal de Primera Instancia erró al no permitir al Demandante declarar, durante su Examen Directo, sobre la proporción de la participación del demandante y de otras personas, si alguna, que hubieran colaborado con él, en cada uno de los 21 proyectos que aparecen en la tabla titulada "RESUMEN DE COMISIONES GENERALES EN LOS 21 PROYECTOS A LOS CUALES ALEXIS HERNANDEZ PARTICIPÓ" del Informe del Perito del demandado, CPA Reynaldo Quiñones, (Anejo 12, Exhibit 5-Estipulado). (Apéndice VI, folio 114).

E. Erró el TPI en su apreciación de la prueba al acoger la Moción de Desestimación al amparo de la Regla 39.2(c), presentada por los Recurridos-demandados y al desestimar la demanda sin ejercitar un escrutinio sereno y cuidadoso de la prueba presentada por el Demandante-Apelante sobre las comisiones debidas, al aquilatar dicha prueba y al formular su apreciación de los hechos del caso.

F. Erró el TPI en su apreciación de la prueba al determinar que el demandante-apelante no ofreció evidencia alguna para sustentar su alegación que tenía derecho al pago de comisiones adeudadas.

El 13 de junio de 2024, este Tribunal emitió una *Resolución* concediéndole un término de veinte (20) días a la parte apelada para que presentara su oposición al recurso. El 15 de junio de 2024, la parte apelante presentó una *Moción para Informar Método de Reproducción de Prueba Oral*. Consecuentemente, el 18 de junio de 2024, emitimos una *Resolución* mediante la cual se le concedió un término de treinta (30) días a la parte apelante para que presentara la transcripción de la prueba estipulada. Posteriormente, el 25 de junio de 2024, la parte apelada presentó una *Oposición a Apelación*. Entretanto, el 12 de septiembre de 2024, la parte apelante presentó la transcripción de la prueba estipulada.

### B. KLCE202400868

El 14 de junio de 2024, EPS presentó ante el foro primario una *Moción al Amparo de la Regla 35.1 de Procedimiento Civil*. En su escrito, alegó que el 2 de mayo de 2019, le hizo una oferta de sentencia al apelante por la cantidad de $100,000.00 y que este último nunca contestó la oferta, por lo que se entendió rechazada. Adujo, además, que la *Sentencia Parcial* del 7 y la del 21 de mayo de 2024, fueron menor a la oferta, pues en ambas sentencias se desestimaron las reclamaciones de incumplimiento de contrato y de despido injustificado.  En consecuencia, el apelado solicitó en honorarios lo siguiente: perito económico $21,148.95, perito psiquiátrico $8,350.00 y abogado $189,012.70, para un total de $219,012.70.

Oportunamente, el 3 de julio de 2024, el apelante presentó *Moción en Cumplimiento de Orden y Oposición a Moción al Amparo de la Regla 35.1 de Procedimiento Civil.* En ella, alegó que la Ley Núm. 402, *infra,* prohíbe la imposición de honorarios de abogado cuando la parte perdidosa es el empleado. Añadió, además, que la oferta de sentencia fue irrazonable, ya que fue de $100,000.00 y su reclamación fue de $2,198,073.00. Finalmente, el TPI dictó una

*Orden* concediendo los honorarios de abogado solicitados por el apelado al amparo de la Regla 35.1 de Procedimiento Civil, *infra.*

Insatisfecho, el apelante acudió ante *nos* mediante un recurso de *certiorari* y señaló la comisión de los siguientes errores:

A. Erró el TPI al imponer al demandante el pago de honorarios de abogado a favor del patrono, al amparo de la Regla 35.1 de Procedimiento Civil.

B. Erró el TPI al imponer al empleado demandante el pago de honorarios de abogado a favor del patrono demandado, al dictar sentencia a favor del patrono, contrario a la establecido por la ley.

### C. KLCE202401088

En cuanto a los hechos fácticos del recurso de *certiorari* presentado por el apelante, el 17 de mayo de 2024, EPS presentó un *Memorando de Costas*, a tenor con la Regla 44.1 de Procedimiento Civil (32 LPRA Ap. V), en el que solicitó un total de $9,806.96 en gastos.[2] Sin embargo, el apelante no se opuso al *Memorando de Costas* presentado por EPS. Consecuentemente, el 29 de julio de 2024, el TPI declaró *No Ha Lugar* al *Memorando de Costas*. Insatisfecho con la determinación, el 5 de agosto de 2024, EPS presentó una *Solicitud de Reconsideración* ante el foro primario en el que expresó que el *Memorando de Costas* fue presentado dentro del término establecido por la Regla 44.1 de Procedimiento Civil, *supra,* y que el apelante no se opuso al referido recurso. Cabe señalar que el apelante tampoco se opuso a la *Solicitud de Reconsideración* presentada por EPS. Así las cosas, el 13 de agosto de 2024, el TPI emitió una *Orden*, mediante la cual declaró *Ha Lugar* el *Memorando de Costas* en reconsideración.

---

[2]

| GASTO | COSTO |
|---|---|
| Franqueo | $ 117.71 |
| Fotocopias | $ 2,543.64 |
| Mensajería | $2,586.60 |
| Deposiciones | $3,626.04 |
| Citaciones | $ 50.00 |
| Sellos de Rentas Internas | $421.00 |
| Costo Expediente Médico | $ 25.00 |
| Materiales de juicio | $ 436.96 |
| **TOTAL DE GASTOS** | **$ 9,806.95** |

Inconforme, el 30 de agosto de 2024, el apelante presentó una *Moción de Reconsideración.* En la misma, objetó la concesión de costas a favor de EPS. Alegó que es improcedente la imposición de costas, ya que no está permitido por la Ley Núm. 402 de 12 de mayo de 1950 (32 LPRA sec. 3115 *et seq.*), mejor conocida como la *Ley que Regula la Concesión de Honorarios de Abogado en los Casos de Reclamaciones de Trabajadores o Empleados contra sus Patronos* (Ley Núm. 402) y el reciente caso de *Class Fernández v. Metro Health Care Management,* 2024 TSPR 63, 213 DPR ___ (2024).

Por su parte, EPS presentó su *Oposición a Solicitud de Reconsideración.*[3] Finalmente, el 4 de septiembre de 2024, el TPI emitió una *Orden* mediante la cual declaró *No Ha Lugar* la solicitud de reconsideración del apelante. Dicha *Orden* fue notificada a las partes el 9 de septiembre de 2024.

En desacuerdo, el apelante compareció ante *nos* mediante recurso de *certiorari* y señaló la comisión del siguiente error:

A. Erró el TPI al imponer al demandante, el empleado, el pago de las costas a favor del demandado, el patrono, al amparo de la Regla 44.1 de Procedimiento Civil.

Con el beneficio de la comparecencia de todas las partes, procedemos a resolver.

**II.**

**A. Apreciación de prueba**

En materia de apreciación de prueba, los foros apelativos habremos de brindar deferencia a las determinaciones de hechos formuladas por el foro judicial primario. *Serrano Muñoz v. Auxilio Mutuo,* 171 DPR 717 (2007); *Rolón v. Charlie Car Rental, Inc.,* 148 DPR 420 (1999). La norma general es que, si la actuación del foro *a quo* no está desprovista de una base razonable y no perjudica los

---

[3] La *Oposición a Solicitud de Reconsideración* se presentó el 5 de septiembre de 2024.

derechos sustanciales de una parte, debe prevalecer el criterio del juez de primera instancia, a quien le corresponde la dirección del proceso. *Sierra v. Tribunal Superior*, 81 DPR 554 (1959).

Por ello, este Foro apelativo intermedio evitará variar las determinaciones de hechos del foro sentenciador, a menos que medie pasión, prejuicio, parcialidad o error manifiesto. Regla 42.2 de Procedimiento Civil (32 LPRA Ap. V). Véase, además, *Ortiz Ortiz v. Medtronic*, 209 DPR 759 (2022); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750 (2013); *Ramírez Ferrer v. Conagra Foods PR*, 175 DPR 799 (2009). Sobre el particular, nuestro Tribunal Supremo ha expresado que:

> Una de las normas más conocidas en nuestro ordenamiento jurídico es que los tribunales apelativos no intervendremos con la apreciación de la prueba, la adjudicación de credibilidad y las determinaciones de hechos que realizan los tribunales de instancia, a menos que se demuestre que el juzgador actuó movido por pasión, prejuicio o parcialidad o que incurrió en error manifiesto. *Dávila Nieves v. Meléndez Marín*, *supra*, pág. 753.

Sin embargo, la aludida norma de autolimitación judicial cede cuando "un análisis integral de [la] prueba cause en nuestro ánimo una insatisfacción o intranquilidad de conciencia tal que se estremezca nuestro sentido básico de justicia; correspondiéndole al apelante de manera principal señalar y demostrar la base para ello". *Pueblo v. Cabán Torres*, 117 DPR 645 (1986). Por tanto, como foro apelativo, no debemos intervenir con las determinaciones de hechos, ni con la adjudicación de credibilidad que hace un Tribunal de Primera Instancia y sustituir mediante tal acción su criterio, por el nuestro. *Rivera Menéndez v. Action Services*, 185 DPR 431 (2012); *S.L.G. Rivera Carrasquillo v. A.A.A.*, 177 DPR 345 (2009). Así pues, la apreciación que hace el foro primario merece nuestra deferencia, toda vez que es quien tiene la oportunidad de evaluar directamente el comportamiento de los testigos y sus reacciones. Recordemos que, el foro de instancia es el único que observa a las personas que declaran y aprecia

su *demeanor*. *Ramírez Ferrer v. Conagra Foods PR, supra*. Véase, además, *Trinidad v. Chade*, 153 DPR 280 (2001); *Ramos Acosta v. Caparra Dairy, Inc.*, 113 DPR 357 (1982).

En fin, como norma general, no intervendremos con la apreciación de la prueba realizada por el Tribunal de Primera Instancia. Regla 42.2 de Procedimiento Civil, *supra*. Véase, además, *Rivera Menéndez v. Action Services, supra*, págs. 448-449; *Monllor Arzola v. Soc. de Gananciales*, 138 DPR 600 (1995).  No obstante, si de un examen de la prueba se desprende que el juzgador descartó injustificadamente elementos probatorios importantes o fundó su criterio en testimonios improbables o imposibles, se justifica nuestra intervención. *C. Brewer P.R., Inc. v. Rodríguez*, 100 DPR 826, 830 (1972).  Ello, sin obviar la norma que establece que un tribunal apelativo no puede dejar sin efecto una sentencia cuyas conclusiones encuentran apoyo en la prueba desfilada. *Sánchez Rodríguez v. López Jiménez*, 116 DPR 172, 181 (1985).

### B.  Peso de la prueba

Es principio cardinal de nuestro ordenamiento jurídico que el peso, o la responsabilidad, de probar o presentar prueba que sustente su postura, recae sobre aquel que promueve una acción. *Rivera Figueroa v. The Fuller Brush Co.*, 180 DPR 894 (2011). Con relación a esto, la Regla 110 de las Reglas de Evidencia de Puerto Rico (32 LPRA Ap. VI), establece, entre otras cosas, que la obligación de presentar evidencia primeramente recae sobre la parte que sostiene la afirmativa en el asunto en controversia. Así, según las exigencias de la Regla 110 de las Reglas de Evidencia, *supra*, los hechos no se prueban con meras alegaciones. *U.P.R. Aguadilla v. Lorenzo Hernández*, 184 DPR 1001 (2012).

Así pues, según establece el profesor Ernesto L. Chiesa Aponte, "[e]l lenguaje de la regla resulta filosóficamente correcto, pues quien afirma la existencia de algo, tiene la obligación de

presentar evidencia para demostrarlo". E.L. Chiesa Aponte, *Reglas de Evidencia Comentadas*, San Juan, Ed. Situm, 2016, pág. 49. Esto responde al entendido jurídico de que el peso de la prueba es una obligación que tiene la parte que afirma la cuestión en controversia, de convencer al juzgador sobre la forma particular en que ocurrieron los hechos que alega. *Rivera Figueroa v. The Fuller Brush Co.*, *supra*, pág. 913.

En lo aquí pertinente, la Regla 37.4 de Procedimiento Civil (32 LPRA Ap. V), dispone que "[a] menos que se demuestre justa causa, el tribunal no permitirá la presentación en el juicio de aquellos documentos, testigos o controversias no identificadas conforme lo requiere esta regla, y tendrá por renunciadas aquellas objeciones y defensas que no hayan sido especificadas en el Informe."

**D. La imposición de costas**

La Regla 44.1 de Procedimiento Civil, *supra*, rige la concesión de costas en nuestro ordenamiento jurídico. Dicha disposición tiene una función reparadora, ya que permite el reembolso de los gastos necesarios y razonables en los que tuvo que incurrir la parte prevaleciente del pleito en la tramitación de este. *Maderas Tratadas v. Sun Alliance et al.*, 185 DPR 880 (2012). Así, su derecho no queda menguado por los gastos que tuvo que incurrir sin su culpa y por culpa del adversario. Íd.

Así pues, esta norma de derecho procesal tiene dos (2) propósitos: (1) restituir lo que una parte perdió por hacer valer su derecho al ser obligada a litigar; y, (2) penalizar la litigación inmeritoria, temeraria o viciosa. *Auto Servi, Inc. v. E.L.A.*, 142 DPR 321 (1997). En nuestra jurisdicción, la imposición de costas a la parte vencida es una norma que es mandatoria. *ELA v. El Ojo de Agua Development,* 205 DPR 502 (2020); *Montañez v. U.P.R.*, 156 DPR 395 (2002). No obstante, su concesión no opera de forma automática, ya que se tiene que presentar oportunamente un

memorando de costas en el que se precisen los gastos incurridos. *Colón Santos v. Coop. Seg. Mult. P.R.,* 173 DPR 170 (2008). Por su parte, la misma Regla 44.1 de Procedimiento Civil, *supra,* dispone que quien no esté conforme con las costas reclamadas podrá impugnarlas en todo o en parte, dentro del término de diez (10) días contados a partir de aquel en que se le notifique el memorándum de costas.

Por lo cual, una vez se presenta oportunamente el memorando de costas, el tribunal deberá determinar cuáles gastos fueron necesarios y razonables y conceder las mismas a la parte victoriosa. *Auto Servi, Inc. v. E.L.A.,* *supra*; *J.T.P. Dev. Corp. v. Majestic Realty Corp.,* 130 DPR 456 (1992). Ahora bien, son costas los gastos necesariamente incurridos en la tramitación de un pleito o procedimiento, que un litigante debe reembolsar a otro por mandato de ley o por determinación discrecional del juez. Regla 44.1 de Procedimiento Civil, *supra.* Véase, además, *J.T.P. Dev. Corp. v. Majestic Realty Corp, supra,* pág. 460; R. Hernández Colón, *Derecho Procesal Civil,* 5ta ed., San Juan, LexisNexis de Puerto Rico, Inc., 2010, sec. 4201, pág. 381.

Así, las costas que contempla la Regla 44.1 de Procedimiento Civil, *supra,* son gastos: (a) necesarios; (b) incurridos; y, (c) razonables. Su razonabilidad se entenderá dentro de la realidad económica de Puerto Rico y, en cuanto a los gastos personales, además, se tendrá en cuenta la condición económica de las personas concernidas (testigos y litigantes). No se aprobarán gastos innecesarios, superfluos o extravagantes. *Garriga, Jr. v. Tribunal Superior,* 88 DPR 245 (1963). Así pues, la razón de ser de esta norma es, resarcir a la parte que resultó victoriosa de los gastos necesarios y razonables incurridos por motivo del pleito y penalizar la litigación viciosa. Íd., pág. 248-249.

Ahora bien, en reclamaciones laborales, la Ley Núm. 402, *supra.*, tiene una disposición relacionada a las costas. En lo particular, dicha ley exime la imposición de costas al trabajador o empleado en reclamaciones extrajudiciales. A esos fines, el Artículo 2 de la mencionada ley dispone que:

> **En los casos en que la reclamación sea satisfecha extrajudicialmente**, las partes, además de cumplir con las disposiciones de ley sobre transacciones, deberán, si no se pusieren de acuerdo sobre los honorarios a ser pagados por el patrono querellado al abogado del trabajador o empleado querellante, someter su determinación a la corte que hubiera tenido jurisdicción sobre el caso. **Las costas de estos procedimientos serán de oficio.** (32 LPRA sec. 3115). (Énfasis nuestro).

### E. Honorarios de abogado

La imposición de honorarios de abogados recae en la sana discreción del tribunal sentenciador y solamente se intervendrá con ella en casos en que dicho foro haya abusado de tal facultad. *Marrero Rosado v. Marrero Rosado* 178 DPR 476 (2010). La Regla 35.1 de Procedimiento Civil (32 LPRA Ap. V) le concede a la parte contra la cual se reclama que se dicte sentencia en su contra bajo los términos que dispone su oferta de sentencia. La misma regla permite al demandado librarse de las costas y honorarios de abogado que se incurrió con posterioridad a la oferta. Esto, solamente cuando la sentencia sea igual o menos favorable que la oferta que se hizo. Sin embargo, esto no aplica automáticamente, sino que es requisito fundamental que el tribunal determine que la oferta fue razonable, realista y de buena fe. *Rivera v. El Vocero,* 160 DPR 327 (2003). Es decir, el tribunal considerará, entre otras cosas, la suma ofrecida, la probabilidad de prevalecer, los gastos anticipables en la preparación del caso y su complejidad. Íd.

No obstante, es sabido que existe una clara política pública en los casos de reclamaciones laborales de proteger a los trabajadores y empleados. Por ello, existen ciertas disposiciones que son más favorables al obrero que al patrono, ya que no existe

igualdad de medios económicos entre las partes para una adecuada defensa de sus derechos. *Rivera v. Insular Wire Products Corp.,* 140 DPR 912 (1996). En lo aquí pertinente, por ser de carácter especial la Ley Núm. 402, *supra,* prevalece ante un estatuto general como es la Regla 35.1 de Procedimiento Civil, *supra.* De modo que, el Artículo 2 de dicha ley establece que "[c]uando se dicte sentencia a favor del patrono querellado no se condenará al trabajador o empleado querellante al pago de honorarios de abogado".

**III.**

Los tres (3) primeros señalamientos de error del caso KLAN202400558, giran en torno a la aplicación que hizo el foro primario en cuanto a la apreciación de la prueba sobre la aplicación de la doctrina de uso y costumbre para determinar que las comisiones debidas al apelante se distribuían en partes iguales entre los vendedores. Por estar intrínsicamente relacionados entre sí, procederemos a discutirlos de manera conjunta.

Surge del expediente ante *nos* que, el 22 de octubre de 2007, el apelante firmó un Contrato Empleado de Outside Sales con EPS (Contrato). Consecuentemente, en noviembre de 2007 comenzó a trabajar con el apelado como vendedor externo. Sus funciones consistían en hacer estimados de ventas y someter propuestas. Además, era responsable de cumplir con la cuota de ventas establecida en su Contrato y de esa manera generar comisiones. La cuota de ventas con la que tenía que cumplir era de $40,000.00 por mes.

Así, surge de la prueba presentada que había una meta grupal de ventas de $425,000.00 mensuales que el grupo de ventas tenía que generar para cubrir los gastos operaciones de la compañía.[4] Así pues, el Contrato que suscribió el apelante con EPS establece que

---

[4] Véase, pág. 7 línea 2 a la 20 de la Transcripción de Continuación Juicio en su Fondo del 18 de abril de 2024.

se suman los tres (3) meses anteriores de las ventas para sacar el promedio de ventas y luego se multiplica por el multiplicador aplicable.[5] Dicho multiplicador iba de un 21% hasta un 35%.[6] Para aumentar el multiplicador en un 1% había que aumentar en $10,000.00 la meta de ventas de $425,000.00.[7]

Así las cosas, el Contrato de Hernández Arnaldy establece que la comisión se calcula luego de que EPS recibe el pago total de la venta y se deducen todos los costos relacionados a esa venta, esto es lo que se conoce como los *true costs*.[8] Posteriormente, el apelante pasó a desempeñar la posición de Gerente de Proyectos. Así, su compensación continuó siendo la misma que establecía el Contrato original. Durante su empleo como Gerente de Proyectos, el apelante trabajó junto con otros tres (3) Gerentes de Proyectos, entiéndase: Alejandro Franganillo, Mónica Colberg y Jorge Estela.[9]

El apelante testificó que el 4 de agosto de 2011, el presidente de EPS envió un correo electrónico en el cual informó que Mónica Colberg iba a tener derecho a cobrar comisiones.[10] Además, el apelante testificó que estaba distribuyendo la comisión de los proyectos en un 33% para el, un 33% para Alejandro Franganillo y un 33% para Jorge Estela.[11] Así pues, afirmó que desde el verano de 2011 sabía que Mónica Colberg tenía derecho a las comisiones y la excluyó del cálculo de comisiones.[12]

---

[5] Véase, pág. 11-12 de la Transcripción de Continuación Juicio en su Fondo del 18 de abril de 2024.

[6] Íd.

[7] Véase, pág. 13 línea 7 a la 21 de la Transcripción de Continuación Juicio en su Fondo del 18 de abril de 2024.

[8] Véase, pág. 136 línea 8 a la 24 de la Transcripción de Continuación Juicio en su Fondo del 18 de abril de 2024.

[9] Véase, pág. 148 línea 18 a la 24 de la Transcripción de Continuación Juicio en su Fondo del 18 de abril de 2024.

[10] Véase, pág. 149-150 de la Transcripción de Continuación Juicio en su Fondo del 18 de abril de 2024.

[11] Véase, pág. 151 línea 1 a la 6 de la Transcripción de Continuación Juicio en su Fondo del 18 de abril de 2024.

[12] Véase, pág. 151 línea 17 a la 20 de la Transcripción de Continuación Juicio en su Fondo del 18 de abril de 2024.

Asimismo, expresó que, posteriormente, los Gerentes de Proyectos se reunieron y decidieron dividir las comisiones de los proyectos en partes iguales para evitar controversias en cuanto a la distribución de las comisiones.[13] Indicó, además, que no tenía derecho a cobrar comisiones en aquellos proyectos que no habían comenzado al momento de su cesantía, ya que su Contrato establece que los empleados cesanteados cobraran aquellas comisiones de órdenes facturadas hasta la fecha de la cesantía.[14] El Exhibit 7 estipulado por las partes establece que, al momento de la cesantía del apelante, su pote de comisiones estaba en negativo $196,586.47.

Luego de evaluar detenidamente el expediente ante nuestra consideración, resolvemos que el foro primario no erró en su apreciación de la prueba al aplicar la doctrina de uso y costumbre para determinar que las comisiones se distribuían en partes iguales entre los vendedores. Esto, pues surge claramente de la Transcripción de la Prueba Oral que, era uso y costumbre de EPS dividir las comisiones de los proyectos para evitar controversias en cuanto a la distribución de las comisiones. Además, notamos que el Informe Pericial de la parte apelada, el cual fue estipulado por las partes, dividió las comisiones de forma equitativa entre los cuatro (4) miembros del equipo. Por ello, correctamente el TPI determinó en el Juicio en su Fondo que sería improcedente permitir la reclamación del apelante, ya que el caso se trabajó de dicha forma por casi diez (10) años.

Por consiguiente, no intervendremos con la apreciación de la prueba que realizó el TPI, la adjudicación de credibilidad y sus determinaciones de hechos, pues no encontramos indicios de que

---

[13] Véase, pág. 151 línea 20 a la 19 de la Transcripción de Continuación Juicio en su Fondo del 18 de abril de 2024.

[14] Véase, pág. 152 línea 8 a la 11 de la Transcripción de Continuación Juicio en su Fondo del 18 de abril de 2024.

este haya actuado movido por pasión, prejuicio o parcialidad. *Dávila Nieves v. Meléndez Marín, supra.*

De otro lado, en su cuarto señalamiento de error del recurso KLAN202400558, el apelante planteó que erró el TPI al no permitirle declarar, durante su examen directo, sobre la proporción de su participación y de otras personas, si alguna, que hubieran colaborado con él, en cada uno de los veintiún (21) proyectos que aparecen en la Tabla titulada *Resumen de Comisiones Generales en los 21 Proyectos a los Cuales Alexis Hern[á]ndez Particip[ó]*, del Informe del Perito del apelado, CPA Reynaldo Quiñones.

Según surge del expediente ante *nos,* Hernández Arnaldy intentó enmendar sus alegaciones con el propósito de establecer que, de los Gerentes de Proyectos, el fue quien trabajó casi de manera exclusiva, los veintiún (21) proyectos que aparecen en el Exhibit 5 estipulado. Entiéndase, en la Tabla titulada *Resumen de Comisiones Generales en los 21 Proyectos a los Cuales Alexis Hern[á]ndez Particip[ó]*. Sin embargo, dicha alegación no fue parte de la teoría del caso establecida en el *Informe Preliminar* y tampoco surge de las alegaciones de la *Demanda*. Por lo tanto, el planteamiento traído por el apelante en la etapa de Juicio en su Fondo fue uno tardío e injustificado.

Asimismo, es menester señalar que, durante su contrainterrogatorio, el apelante admitió que los Gerentes de Proyectos determinaron dividir las comisiones en partes iguales para evitar controversias, ya que los proyectos comprenden mucho trabajo y es un esfuerzo de grupo. Así, su admisión derrota la enmienda a las alegaciones que pretendía con relación al porciento aplicable a la distribución de las comisiones.

En su quinto señalamiento de error Hernández Arnaldy esgrimió que erró el TPI en su apreciación de la prueba al acoger la *Moción de Desestimación* al amparo de la Regla 39.2(c), presentada

por los apelados y al desestimar la *Demanda* sin ejercitar un escrutinio sereno y cuidadoso de la prueba presentada sobre las comisiones debidas, al aquilatar dicha prueba y al formular su apreciación de los hechos del caso. Indicó, además, en su sexto señalamiento de error que incidió el foro primario en su apreciación de la prueba al determinar que no ofreció evidencia alguna para sustentar su alegación que tenía derecho al pago de comisiones adeudadas. No tiene razón.

Según el derecho que antecede, el peso, o la responsabilidad, de probar o presentar prueba que sustente su postura, recae sobre aquel que promueve una acción. *Rivera Figueroa v. The Fuller Brush Co.*, *supra.* Cónsono con esto, la Regla 110 de las Reglas de Evidencia de Puerto Rico, *supra,* establece que la obligación de presentar evidencia primeramente recae sobre la parte que sostiene la afirmativa en el asunto en controversia. Así pues, según las exigencias de la Regla 110 de las Reglas de Evidencia, *supra,* los hechos no se prueban con meras alegaciones. *U.P.R. Aguadilla v. Lorenzo Hernández, supra.*

En consecuencia, en el caso ante nuestra consideración le correspondía a la parte apelante probar las alegaciones de la *Demanda.* Así, aun cuando el apelante testificó que el estimado de $1,300,000.00 de comisiones presuntamente adeudadas salía de sus cálculos, ya que el guardaba récords de todas sus ventas y luego las conciliaba, no surge de la prueba presentada evidencia de dichos cálculos o récords. Es decir, el apelante tenía el deber de presentar evidencia para demostrar la existencia de la presunta deuda de comisiones.

Asimismo, es importante destacar que el único documento que establece las comisiones del apelante es el Exhibit 7 **estipulado por las partes** el cual establece que, al momento de la cesantía del apelante, su pote de comisiones estaba en **negativo** $196,586.47.

Por otra parte, Hernández Arnaldy señaló en los recursos KLCE202400868 y KLCE202401088, que erró el TPI al imponerle, siendo este el empleado, el pago de las costas y honorarios de abogado. Sostuvo que la Ley Núm. 402, *supra*, prohíbe que se le imponga costas y honorarios de abogado cuando un empleado es la parte perdidosa.    A su vez, que los honorarios de abogado reclamados bajo la Regla 35.1 de Procedimiento Civil, *supra*, no proceden por ser irrazonables, ya que la oferta de sentencia fue de $100,000.00, mientras que la reclamación era de $2,198,073.00. Por último, planteó que es improcedente la imposición de costas y honorarios de abogado por consideraciones de política pública que envuelven las reclamaciones laborales.

En cuanto a la imposición de honorarios de abogado del recurso de KLCE202400868, al apelante le asiste la razón. Según el derecho ya reseñado, existe una clara política pública a favor de los trabajadores que hacen reclamaciones en contra de sus patronos. El Artículo 2 de la Ley Núm. 402, *supra*, expresamente dispone que aun cuando se dicte sentencia a favor del patrono, no se condenará al trabajador o empleado al pago de los honorarios de abogado. Por tratarse de una ley especial, prevalece sobre la imposición de honorarios de abogado al amparo de la Regla 35.1 de Procedimiento Civil, *supra*. Ciertamente, cuando el texto de la ley es claro, no hay necesidad de recurrir al subterfugio de indagar más allá de la ley para cumplir con su propósito legislativo. *Class Fernandez v. Metro Health Care Mgmt. Sys., Inc., supra*, pág. 12. Por lo tanto, no es necesario determinar si la oferta de sentencia hecha por el apelado fue razonable.

Así pues, erró el TPI al imponer al apelante el pago de honorarios de abogado a favor del apelado. En consecuencia, se revoca la *Orden* emitida el 9 de julio de 2024.

Ahora bien, en cuanto al error presentado en el recurso KLCE202401088 de imposición de costas, vimos que el apelante incumplió con lo dispuesto en la Regla 44.1 de Procedimiento Civil, *supra*, al no oponerse al memorando de costas dentro del término de diez (10) días provisto por la regla. Del expediente ante *nos* se desprende que, el apelante objetó por primera vez la imposición de costas el 30 de agosto de 2024, en un estimado de tres (3) meses desde que por primera vez se hizo la solicitud el 17 de mayo de 2024. En dicha solicitud el apelante se limitó a impugnar la imposición de costas bajo el Artículo 2 de la Ley Núm. 402, *supra*, sin cuestionar la cuantía impuesta. Al examinar dicho artículo, este dispone que las costas de oficio serán aquellas incurridas en los procedimientos laborales extrajudiciales cuando los abogados no se puedan poner de acuerdo en torno a la cantidad que le corresponde al patrono pagar en concepto honorarios. Por ello, es evidente que este artículo, se refiere únicamente a las reclamaciones laborales que fueron resueltas extrajudicialmente y no a prohibir las costas a favor del patrono en litigios tramitados judicialmente.

Por otra parte, el apelante nos pide que tomemos en consideración el reciente caso del Tribunal Supremo *Class Fernandez v. Metro Health Care Mgmt. Sys., Inc., supra,* el cual resolvió que no era de aplicación la Regla 44.1 de Procedimiento Civil, *supra,* en casos resueltos bajo la Ley Núm. 2 de 17 de octubre de 1961, según enmendada (32 LPRA sec. 3118 *et seq.*)*,* conocida como la *Ley de Procedimiento Sumario de Reclamaciones Laborales.* (Ley Núm. 2).

Nótese que la Ley Núm. 402, *supra*, establece que únicamente las costas serán de oficio en reclamaciones extrajudiciales, mientras que la Ley Núm. 2, *supra,* dispone que "**[t]odas** las costas que se devengaren en esta clase de juicios serán satisfechas de oficio". (32 LPRA sec. 3132). (Énfasis nuestro). Por lo tanto, el mencionado caso

no aplica a la controversia ante *nos*, por haber sido resuelto al amparo de la Ley Núm. 2 y no la Ley Núm. 402, *supra.* De modo que, la disposición que aplica es la Regla 44.1(a) de Procedimiento Civil, *supra,* la cual le impide al TPI el negar el pago de costas cuando lo solicita la parte vencedora. Por lo tanto, el foro de instancia no cometió el error señalado.

## IV.

Por los fundamentos antes expuestos, *confirmamos* la *Sentencia Parcial* apelada. Asimismo, *expedimos* el auto de *certiorari* en el caso KLCE202400868 y, en consecuencia, *revocamos* la *Orden* que impuso los honorarios de abogado. Finalmente, *expedimos* el auto de *certiorari* en el caso KLCE202401088 y *confirmamos* la *Orden* en cuanto a la imposición de costas.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones